UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PATRICIA A. HAYNES, | ) | Civil Action No.: 4:20-cv-0922-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied. This action is proceeding before the undersigned pursuant

to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for DIB on July 12, 2010, alleging inability to work since

October 7, 2007. Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff

filed a request for a hearing. A hearing was held on August 15, 2012, at which time, a vocational

expert (VE) and Plaintiff testified. The Administrative Law Judge (ALJ) Martin issued an

unfavorable decision on September 12, 2012, finding that Plaintiff was not disabled within the

meaning of the Act. (Tr. 1476). Plaintiff filed a request for review of the ALJ's decision, which the

Appeals Council denied on November 14, 2014, making the ALJ's decision the Commissioner's

final decision. (Tr. 1468). Plaintiff filed an action in this court. Defendant moved to remand which

was granted by this court on June 20, 2014, stating that the ALJ's opinion did not reflect adequate consideration of Plaintiff's 90% disability rating by the VA and was to explain the weight given to the opinion. (Tr. 1501-1502). On January 15, 2015, another hearing was held. On March 18, 2015, ALJ Watson issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 1523). On April 22, 2015, Plaintiff filed written exceptions and the Appeals Council assumed jurisdiction and remanded the case again to the ALJ to address: chronic constipation, migraines, reaching limitations opined by consultants, and additional evidence that prior to the DLI the VA found Plaintiff 100% disabled. (Tr. 1533-1534). The ALJ was tasked with obtaining further documents from the VA about the rationale for the 100% rating, as well as other tasks related to other issues. (Tr. 1534). On January 6, 2016, a third hearing was held. (Tr. 1540).

On March 23, 2016, ALJ Watson issued a third unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 1540). This was again appealed to this court. On July 19, 2017, upon Defendant's motion, this court remanded again because the ALJ's decision did not reflect adequate consideration of the VA rating. (Tr. 3875-3876). On March 11, 2019, the Appeals Council expressly noted in the remand order that the record did not show the required attempt to obtain further documentation from the VA about the rationale for their 100% rating as instructed in the remand order and the October 2010 decision was submitted as "Exhibit 18D"[1] one day after the ALJ's decision. (Tr. 3883). Another hearing was held on September 11, 2019. (Tr. 3848). Plaintiff amended the AOD to January 1, 2010. (Tr. 3821). On November 12, 2019, ALJ Morriss found Plaintiff not disabled. (Tr. 3836). The Appeals Council declined to assume

---

[1] Exhibit 18D is the October 2, 2010 rating decision with a fax receipt date of March 24, 2016. (Tr. 1784-1795). There are additional VA decisions in the record at Exhibit 25D. (Tr. 4069).

jurisdiction. On March 3, 2020, Plaintiff filed the instant action in this court. (ECF No. 1).

**B.    Plaintiff's Background and Medical History**

Plaintiff was born on December 17, 1964, and was forty-eight years old on the date last insured. Plaintiff has at least a high school education. Plaintiff alleges disability originally due to unusable left arm that was injured in military, herniated disc L4-L5, stroke, plate and screws holding left ankle together, migraines, and depression. (Tr. 173).  Only relevant records will be summarized under pertinent issue headings.

**C.    The ALJ's Decision**

In the decision of November 12, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 3823):

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.    The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2010 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe combination of impairments: degenerative disc disease (DDD) and depression (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) except that she could not climb ladders, ropes, or scaffolds. The claimant could occasionally perform other postural activities. She was to avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and fumes, odors, dust, gases, and poor ventilation. The claimant was limited to understanding,

remembering and carrying out simple instructions.

6.      Through the date last insured, the claimant was unable to perform her relevant work, including work as a corrections officer, dispatcher, deputy jailer, office clerk, and victim advocate (20 CFR 404.1565).

7.      The claimant was born on December 17, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2010, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred by relying solely on the Grids at Step Five without reliance on VE testimony, where the RFC contained both exertional and non-exertional limitations Plaintiff argues the ALJ did not adequately consider the 100% disability VA rating as required under Defendant's rules, as directed by this court in prior orders, and as mandated by the Fourth Circuit Court of Appeals.. Plaintiff argues the ALJ erred in evaluating Dr. Scott's opinion. Plaintiff argues the ALJ erred in failing to find the following impairments severe: left shoulder/arm impairment, chronic constipation, pelvic floor dysfunction, migraines, and major depressive disorder-moderate.

4

Plaintiff argues the ALJ erred in formulating the RFC determination.

Defendant argues the ALJ supported findings with substantial evidence.

A.    **LEGAL FRAMEWORK**

1.    **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

_____

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

---

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## B.     ANALYSIS

### Step Five

Plaintiff argues the ALJ erred by relying solely on the Grids at Step Five without reliance on

VE testimony, where the RFC contained both exertional and non-exertional limitations. Plaintiff's RFC contained postural limitations, environmental limitations[4] of avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dust, gases, and poor ventilation and mental non-exertional limitations of limited to understanding, remembering, and carrying out simple instructions. (Tr. 3828-3829).

At Step Five, the ALJ must determine whether a claimant can perform "other work." 20 C.F.R § 416.920(g). A claimant can perform "other work" if there are one or more jobs existing in significant numbers in the national economy that he can perform given his functional limitations. 20 C.F.R. § § 404.1566(b), 416.966(b). One way an ALJ can make this determination is through the use of the Medical Vocational Guidelines ("the Grids"). 20 C.F.R pt. 404, subpt. P, app. 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). The Grids contain numbered tabled rules that direct conclusions of "disabled" or "not disabled" based on a claimant's vocational factors and his specific exertional RFC (sedentary, light, etc.). 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).

Where non-exertional limitations exist, the Grid rules will not be directly applied, but are used as a framework. SSR 83-14, 1983 WL 31254, *1. The applicable Grid for a claimant's "vocational profile and maximum sustained exertional work capability"is "the starting point to evaluate what the person can still do functionally." SSR 83-14, *3. Once the ALJ decides if a person can meet the primary strength requirements of sedentary, light, or medium(standing, sitting, walking, lifting, carrying, pushing, pulling), the ALJ then decides as to how much of this occupational base remains, considering certain non-exertional limitations. SSR 83-14, *3-4. VE

---

[4] While Plaintiff does not expressly argue each non-exertional limitation individually, Plaintiff raises the issue as to all non-exertional limitations limiting the use of the Grids in this situation.

testimony may be helpful in the erosion inquiry but is not always required.  SSR 83-14, *4; *see*

*Golini v. Astrue*, 483 Fed. Appx. 806, 808 (4th Cir. 2012).

At Step Five, the ALJ here acknowledged the Grid rules that when nonexertional limits exist

that the Grids are only a framework and not used as a direct conclusion of disabled or not disabled.

(Tr. 3836). The ALJ found, without any reliance on VE testimony or specific available jobs:

> Through the date last insured, if the claimant had the residual functional capacity to
> perform the full range of light work, considering the claimant's age, education, and
> work experience, a finding of "not disabled" would be directed by
> Medical-Vocational Rule 202.21. The additional limitations had little or no effect on
> the occupational base of unskilled light work. The postural limitations would leave
> the light occupational base virtually intact (SSR 85-15). Similarly, the limitation on
> climbing ladders would not significantly erode the light occupational base (SSR 83-
> 14). The environmental limitations would not significantly erode the light
> occupational base, as these are not present in most occupations, especially at
> concentrated levels (SSR 85-15). Understanding, remembering and carrying out
> simple instructions would not preclude unskilled work (SSR 85-15). A finding of
> "not disabled" is therefore appropriate under this rule.

(Tr. 3836).

As quoted above, the ALJ noted numerous additional non-exertional limitations previously

found in the RFC and cited SSRs as support for the conclusions that each such additional limitation

failed to significantly erode the light occupational base.

As for environmental limitations, the ALJ supported the conclusion of no significant erosion

of the light occupational base as to the environmental limitations with citation to SSR 85-15 . Thus,

the court only analyzes what the ALJ used as support for such finding, ignoring any post-hoc

rationalization.[5]

_____

[5] The undersigned recognizes there are differing views on the application of SSR 85-
15("Capability to do Other Work-The Medical Vocational Rules as a Framework for Evaluating
Solely Nonexertional Impairments") in relation to SSR 83-14("Capability to do Other Work -
The Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and

SSR 85-15 provides:

5. Environmental Restrictions
A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or subject the individual or others to the risk of bodily injury. Surroundings which an individual may need to avoid because of impairment include those involving extremes of temperature, noise, and vibration; recognized hazards such as unprotected elevations and dangerous moving machinery; and fumes, dust, and poor ventilation. A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.

Where a person has a medical restriction to **avoid excessive** amounts of noise, dust, etc., the impact on the broad world of work would be **minimal** because most job environments do not involve great noise, amounts of dust, etc.

Where an individual **can tolerate very little** noise, dust, etc., the impact on the ability to work would be **considerable** because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

**Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [VE].**

SSR 85-15, 1985 WL 56857, *8 (emphasis added).  The RFC here included "avoid **concentrated**

exposure." (Tr. 3829)(emphasis added). Where an environmental limitation was "avoid concentrated

exposure," it was error for the ALJ to rely on SSR 85-15 and the ALJ failed to meet his Step Five

burden without VE testimony to produce evidence that jobs existed in significant numbers in the

national economy that a plaintiff could perform with the restrictions the ALJ had given in the RFC.

---

Nonexertional Impairments") where a particular RFC contains both exertional and non-exertional limitations. *See Cobbs v. Colvin*, No. 1:15-cv-1972-JMC-SVH, 2016 WL 3085906, at *12-13 (D.S.C. Apr. 1, 2016) *adopted by* 2016 WL 3059854 (May 31, 2016); *Carruthers v. Colvin*, 2013 WL 1703549, *9-10 (M.D.N.C. Apr. 19, 2013), *adopted by* 2013 WL 4811723 (Sept. 9, 2013); *Boland v. Astrue*, 2009 WL 2431536, at *6, n.12 (E.D. Va. Aug 7, 2009) *aff'd* 393 Fed. Appx. (4th Cir. 2010). The ALJ did not rely on SSR 83-14 in analyzing the environmental limitations in the RFC at Step Five here.

*Cobbs v. Colvin*, No. 1:15-cv-1972-JMC-SVH, 2016 WL 3085906, at *12-13  (D.S.C. Apr. 1, 2016), *adopted by* 2016 WL 3059854 (May 31, 2016); *Nixon v. Comm'r*, No. 4:18-cv-2309-TMC (Jan. 7, 2020)(Westlaw citation unavailable).

The ALJ's citation to SSR 85-15 here to support his conclusion that the light work base was not significantly eroded by the environmental limitations included in the RFC is not supported by substantial evidence. "Avoid concentrated exposure" falls into neither category of "avoid excessive amounts" and "can tolerate very little."  SSR 85-15 itself states "[w]here the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of reference materials or the services of a [VE]."  SSR 85-15.

This is enough to state that substantial evidence does not support the ALJ's Step Five finding; however, the court continues with the nonexertional restriction to simple instructions. As to the limitation of understanding, remembering, and carrying out simple instructions, case law supports remand of this issue since a nonexertional limitation could affect the ability to perform certain jobs in the unskilled light occupational base. *Sherby v. Astrue*, 767 F. Supp. 2d 592, 600 (D.S.C. 2010).  "It may be that a vocational expert will find that a limitation in the area of concentration would affect unskilled, light jobs and further erode the number of such available jobs. Of course, it may be that a vocational expert can identify a significant number of unskilled, light jobs, which would not be affected by Claimant's nonexertional limitations." *Id.* It is for the ALJ to make these findings with the assistance of a VE and without full reliance on the Grids when nonexertional limitations are present. *Id.*; *see Wilson v. Colvin*, No. 6:14-cv-4322-TMC-KFM, 2015 WL 9660028, at *11 (D.S.C. Dec. 21, 2015), *report and recommendation adopted*, 2016 WL 81808 (D.S.C. Jan. 7, 2016)(collecting cases)(RFCs accounting for mental restrictions that affect the

11

occupational base for unskilled work preclude reliance on Grids to direct a finding of not disabled.); *Herndon v. Berryhill*, 2018 WL 5020158 (D.S.C. July 21, 2018)("the Court finds that the ALJ improperly relied on the GRIDS—instead of using a VE—in determining Plaintiff not disabled because Plaintiff suffers from severe exertional and nonexertional limitations").

Based on the explanation and evidence cited by the ALJ at Step Five, the ALJ did not carry his burden that jobs existed in significant numbers in the national economy that Plaintiff could perform with the RFC the ALJ had given.

The undersigned has reviewed all the VE hypotheticals asked at all the hearings in this action. The exact mental limitation RFC of "understanding, remembering, and carrying out simple instructions" found here was never asked of a VE.[6]  This matter should be remanded[7] based on this issue.

**VA Opinion**

Plaintiff argues the ALJ did not adequately consider the 100% disability VA rating as required under Defendant's rules, as directed by this court in prior orders, and as mandated by the Fourth Circuit Court of Appeals.

Here, the ALJ found:

---

[6] At the 2012 hearing, the hypothetical was unskilled and sedentary. (Tr. 52). At the 2015 hearing, the hypothetical was "simple routine repetitive tasks in an environment where changes are infrequent and introduced gradually." (Tr. 1433). At the 2016 hearing, the hypothetical was "light with simple routine repetitive tasks in an environment where changes are infrequent and introduced gradually." (Tr. 1462). At the 2019 hearing, there was no VE. (Tr. 3850).

[7] The nuance that makes this action– despite it's long history and short relevant period– a remand and not a reversal for benefits is that under the RFC of "simple instructions," theoretically there could be DOT reasoning level one jobs available that a VE might testify were available. Thus, the record does not clearly show a finding of disabled supportive of reversal for benefits.

I have considered the principles set forth in *Bird v. Commissioner of Social Security*, 699 F.3d 337(4th Cir. 2012) (hereinafter *Bird*). In *Bird*, the Fourth Circuit Court stated, "The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an Administrative Law Judge may give less weight to a VA disability rating when the record before the Administrative Law Judge clearly demonstrates that such a deviation is appropriate."

In the present case, on October 4, 2010, the VA found that based upon an examination dated January 4, 2010, that the claimant had an overall combined rating of 90%. Her medical descriptions were as follows: 50% attributed to her major depressive; 40% to her lumbar degenerative disc disease; 20% to her left shoulder arthropathy; 10% for a painful scar status post laminectomy; 10% radiculopathy of the right lower extremity; 10% of the left lower extremity; 10% for scars (cystectomy of the mid-forehead), and 10% nontender scars from a left foot bunionectomy. The VA granted the claimant's entitlement to individual unemployability. The claimant's DDD and depression will cause some limitations as reflected in the above residual functional capacity assessment, but did not render the claimant unable to work, prior to her date last insured. As such, I have considered the claimant's combined impairments in arriving at the above residual functional capacity, but, nonetheless, accord the claimant's VA disability rating less than substantial weight (Exhibit 18D, 33F).

(Tr. 3832-3833). The ALJ did not explain how the record "clearly demonstrated" that deviation from substantial weight was appropriate. The ALJ's only reasoning provided was that some impairments caused some limitations and did not render Plaintiff unable to work.[8] The VA's decision and

---

[8] Defendant's post-hoc rationalization with respect to this issue cannot be considered by the Court. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the

reasoning was not even discussed, just the percentages.

The VA's October 2010 decision granted individual employability as of January 4, 2010, very near Plaintiff's current alleged onset date. (Tr. 1784). Evidence reviewed by the VA were examinations on January 4, 2010, January 7, 2010, March 27, 2010, March 30, 2010, and August 25, 2010; records from the SSA, and outpatient treatment records from July 2009 to September 2010. (Tr. 1785). Under reasons, it is noted an examiner found Plaintiff unemployable due to depression and pain from lumbar spine and left shoulder condition. (Tr. 1786). Upon exam, Plaintiff exhibited depressive affect, was tearful, and avoided eye contact. Plaintiff had a GAF of 50. (Tr. 1787). The VA found the evidence showed Plaintiff had occupational and social impairment with reduced reliability and productivity due to symptoms of disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships. (Tr. 1787). Examination showed pain to palpation or range of motion of Plaintiff's left shoulder. At an August 2010 exam, Plaintiff had reduced range of motion with pain. (Tr. 1789).

In 2012, the Fourth Circuit decided *Bird v. Comm'r of S.S.A.*, 699 F.3d 337 (4th Cir. 2012). The ALJ "must give substantial weight to a VA disability rating." *Id.* at 343. The VA and the SSA "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* The Fourth Circuit held that because both agencies assess a person's ability to work in the national economy by focusing on functional limitations, "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* The ALJ may give less than substantial weight to the VA determination "when the record before the ALJ clearly demonstrates such a deviation is appropriate." *Id.*

---

grounds for her decision and confine our review to the reasons supplied by the ALJ.")

In light of *Bird*, the ALJ's explanation here is lacking. *See Brooks v. Berryhill*, No. 8:16-CV-01229-MGL-JDA, 2017 WL 1531953 (D.S.C. Apr. 26, 2017), *report and recommendation adopted*, 2017 WL 1735364 (D.S.C. Apr. 28, 2017)(failure to assign substantial weight in accordance with *Bird* and explain deviation required remand)(collecting cases).

Considering the record as a whole, the court lacks the ability to determine whether substantial evidence supports the ALJ's decision. As such, remand is required. Remand is necessary for the fact finder to address and weigh, in accordance with *Bird*, the VA determination and reasons, as well as reconcile the determination with any other conflicting and/or supporting evidence in the record. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." *Meyer*, 662 F.3d at 707.

**Dr. Scott**

The ALJ gave little weight to Dr. Scott's June 2011 letter opinion that "she did not see the claimant returning to work in the near future," for the reasons that these were not specific functional limitations and a duration of limitations or response to treatment was not stated. (Tr. 3835). While possibly couched as a disabled statement finding, which is a finding reserved only for the commissioner,[9] the ALJ did not analyze all 20 C.F.R. § 404.1527(c) factors as required. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021);*Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 ("20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion.").

Further, while Defendant notes the GAF scores were noted, the ALJ never weighed Dr.

---

[9] *Morgan v. Barnhart*, 142 Fed. Appx. 716, 723 (4th Cir. 2005); 20 C.F.R. § 416.927(d)(2).

Scott's GAF opinions.[10] This issue further supports remand.

**Pelvic floor dysfunction**

The ALJ did not address an impairment, much less a severity rating, regarding pelvic floor dysfunction. (Tr. 3824). Defendant argues Plaintiff fails to point to any evidence of how this would affect her ability to work. Plaintiff points to evidence of pain complaints related to the impairment.

On December 20, 2012, Dr. Joseph D. Thomas, a gastroenterologist at the VAMC, examined Ms. Haynes and provided a summary of Plaintiff's recent history within the relevant period. At that visit, Plaintiff complained she continued with constipation and declined further biofeedback therapy for pelvic floor dysfunction because it was not helpful many years ago. (Tr. 1869). Plaintiff may go up to two weeks without a bowel movement. Plaintiff failed miralax and fiber. Plaintiff had pain with defecation consisting of burning sharp sensations in her anus and having to lean to the left to have a bowel movement, and also must push her perineum to pass the stool. Plaintiff's February 2011 colonoscopy was normal except for a small tubular adenoma. In September 2011, Plaintiff had a MRI defecography that showed very poor squeeze ability and she was unable to expel balloon. A December 2011 anorectal manometry showed severe decreased sensory threshold and very poor

---

[10] "For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2). An adjudicator considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by §§ 20 CFR 404.1527(c), 416.927(c), and SSR 06-03p, while keeping the following in mind: The GAF is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF needs supporting evidence to be given much weight. ...When case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good reasons in the personalized disability explanation or decision notice." Administration's directive AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (eff. date July 22, 2013, revised Oct. 14, 2014). *But see Woodbury v. Colvin*, No. 9:15-cv-2635-DCN, 2016 WL 5539525, *6 (D.S.C. Sept. 30, 2016)(collecting cases)( "[C]ourts in this Circuit are split on the effect of AM-13066." ).

squeeze pressure. Dr. Thomas stated these objective findings were consistent with pelvic floor

dysfunction. (Tr. 1869). Under plan, "the patient has a long complicated history of constipation. We

know she has pelvic floor dysfunction but there is also a question of whether she has colonic inertia

and she is also profoundly hypothyroid. Given all of these things, her constipation is likely

multifactorial." (Tr. 1872). Plaintiff agreed to proceed with a sitz marker study. (Tr. 1873).

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of

[a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant

bears the burden at this step to show that she has a severe impairment. *Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical

or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c), 416.920(c). "Basic work

activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § § 404.1521(b),

416.921(b). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
> reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;
> and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § § 404.1521(b), 416.921(b). "[A]n impairment can be considered as 'not severe' only

if it is a slight abnormality which has such a minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks

omitted).

Further, it is important for the ALJ to address both severe and non-severe impairments at Step Two since he is obligated to consider the combined effect of all impairments in Step Three and, if necessary, at subsequent steps of the sequential analysis.  42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989)

No mention is made of Plaintiff's pelvic floor dysfunction as either a severe or non-severe impairment.  The failure of the ALJ to address all impairments, particularly the documentation regarding PFD, fundamentally undermines the validity of the assessment of Plaintiff's condition at Step Three and subsequent steps of the sequential analysis.  *See also Ducoff v. Colvin*, No. 0: 13-1484-RMG, 2014 WL 3784337, at *4-5 (D.S.C. July 30, 2014).  The error in not discussing all of Plaintiff's impairments was not cured in the RFC discussion.

The record contains documentation of treatment by a specialist with objective evidence regarding PFD.

After careful review and consideration, the Court concludes that the ALJ erred in his Step Two analysis.  By not referencing Plaintiff's claimed impairment of PFD, it is impossible to tell that the ALJ considered all of the claimant's impairments and whether they were severe or non-severe.  It may very well be that substantial evidence exists in the record to support the ALJ's decision, but an adequate discussion is not present regarding this issue.  It is beyond this court's purview to make such findings.

Failure to consider PFD at Step Two of the analysis has flawed the remaining steps of the sequential analysis.  Here, by omitting any discussion at any step on PFD, the ALJ failed to consider or, at least failed to articulate whether and how he considered at Step Three, all of Plaintiff's impairments together, thereby not properly following 20 C.F.R. § 404.1523.

Based on the foregoing, this matter should be remanded for further consideration of Plaintiff's impairments at Step Two, and the impact on the remaining sequential process. The ALJ can examine Plaintiff's claimed impairment of PFD and expressly determine whether he finds it to be a "severe" or "non-severe" impairment. Then, regardless of whether he finds it to be severe or non-severe, the ALJ should conduct a proper analysis under Step Three by considering the combined effect of all of Plaintiff's impairments, severe and non-severe, and, in the decision on remand, explain his evaluation of the combined effect of all of Plaintiff's impairments.

Remaining allegations of error by Plaintiff may further support remand; however, as a matter of judicial economy, such will not be further discussed as there are multiple issues supporting remand already discussed.

In light of the court's finding that this matter should be remanded for further consideration, the court need not address all of Plaintiff's remaining issues. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the ALJ should take into consideration all of Plaintiff's remaining allegations of error in her brief.

### III. CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290

(*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  As discussed above, the ALJ's decision is not based on substantial evidence.[11]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)).  "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and

---

[11] Remand, rather than reversal, is required when the ALJ fails to explain her reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. §

405(g) and this case is REMANDED to the Commissioner for further administrative action as set

forth above.

<div style="margin-left:50%">

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

</div>

May 14, 2021  
Florence, South Carolina